## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BENJIE LORENZO CARDENAS and
VIOLET PREITO,

        Plaintiffs

vs.                                              Civ. No. 06-0936 JH/RLP

MATTHEW FISHER, an officer of the
Albuquerque Police Department, individually
and in his official capacity,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Matthew Fisher's Motion for

Partial Summary Judgment Requesting Dismissal of Counts II, III, IV, and VI of Plaintiffs'

Complaint, filed July 31, 2007 [Doc. No. 45].  The Court, having considered the motion, briefs,

and relevant law, and being otherwise fully informed, finds that the motion is not well taken and

will be denied.

## BACKGROUND[1]

On December 3, 2005, after 10:00 in the evening, Defendant Fisher, an officer employed

by the City of Albuquerque Police Department, was on routine patrol when he observed the

driver of a silver Honda Civic drive through a stop sign without stopping.  Defendant Fisher ran

---

[1] For the purpose of a motion for summary judgment on the ground of qualified immunity, the Court considers the facts as alleged by the Plaintiffs.  On a motion for summary judgment on a claim under the New Mexico Tort Claims Act, the Court construes all factual disputes in favor of the nonmoving party.  Accordingly, where a factual dispute exists, the Court either does not consider the facts as alleged by the Defendant or construes the facts and makes all reasonable inferences in favor of Plaintiffs.

a check of the license plate of the Honda through the New Mexico Motor Vehicle Department and learned that the license plate was a "skip," which means that the license plate was not registered to any vehicle.

Defendant Fisher initiated a traffic stop of the vehicle in the alley behind the apartments located at 2114 John Street where Plaintiffs Benjie Cardenas and Violet Preito lived.  Defendant Fisher asked the driver for his driver's license, registration, and proof of insurance.  Although the driver handed Defendant Fisher a driver's license, he was unable to produce registration or proof of insurance.  The name on the driver's license was Isaac Romero.

The photograph on the driver's license depicts a Hispanic male with short, dark brown hair, a goatee, and a mustache.  The driver's license lists Isaac Romero's height as 5'8" and his date of birth as February 18, 1975.  An eye witness testified that the driver was "a little like a chunky guy" and "he wasn't a young guy."  The driver was wearing a black leather jacket and blue jeans with a paint stain on the pants.  The driver told Defendant Fisher that he lived within the immediate vicinity of the traffic stop.  The driver's license contained the address of 226 Kathryn Street, N.E.  According to an eye witness, the driver of the vehicle was visibly drunk or otherwise under the influence of a substance.  The driver was slurring his words and was not talking clearly.  He kept saying to Defendant Fisher, "Excuse me, Your Honor, can I call my lawyer?"  Defendant Fisher responded, "Are you serious?" and started laughing.

 Defendant Fisher took the driver's car keys and placed them on the trunk of the driver's automobile.  Defendant Fisher then returned to his police car.  As Defendant Fisher was writing out citations and running the driver's identification through NCIC, the driver yelled to someone from the adjacent apartment building located at 2114 John Street.  A female approached the driver and began talking to him.  Defendant Fisher observed the driver open the car door to his

vehicle, and Defendant Fisher told the driver to close the door.  The driver only closed the door partially.  Thereafter, the driver opened the car door again, exited the car, grabbed his car keys, and began running in the direction of the adjacent apartment complex where Plaintiffs lived.

Defendant Fisher did not chase the driver of the Honda.  Instead, he reported over the Albuquerque Police Department radio that the driver had run.  Thereafter, approximately four or five minutes later, two officers arrived on the scene.  Defendant Fisher told the officers he still had "the stupid ****'s ID."  The officers did not proceed to the address on the driver's license. Instead, they began knocking on the doors of residences in the immediate vicinity to look for the driver.

On December 3, 2005, Plaintiffs Cardenas and Preito resided in separate apartments, both of which were located at 2114 John Street.  Plaintiff Preito lived in Apartment A with her disabled adult son and younger children.  Plaintiff Preito's son, Plaintiff Cardenas, lived in Apartment C, located in the same complex, with his roommate Jesus Garcia.

After knocking on the doors of two residences and briefly questioning the residents whether they knew the person on the picture of the driver's license, Defendant Fisher, accompanied by the two officers, proceeded to 2114 John Street, Apartment A, and knocked on the door.  Plaintiff Cardenas answered the door.  At this point, approximately ten minutes had passed since the person ran from Defendant Fisher at the traffic stop.

Plaintiff Cardenas is a Hispanic male with dark hair, a haircut similar to Mr. Romero's driver's license photograph, and a mustache.  Plaintiff Cardenas was not wearing the clothing Defendant Fisher and eye witnesses had seen on the driver of the Honda.  Rather, Plaintiff Cardenas was wearing a pair of shorts, a sleeveless muscle shirt, and socks.  Plaintiff Cardenas is two inches taller than the height listed on the "Isaac Romero" driver's license, three and one-half

years younger, and approximately fifteen pounds heavier.  Plaintiff Cardenas was not drunk and was not acting drunk at the time Defendant Fisher encountered him.  Plaintiff Cardenas was at his mother's house that day since approximately noon helping her with Christmas decorations.

When Plaintiff Cardenas answered the door, Defendant Fisher immediately pushed into the home and tackled Plaintiff Cardenas.  Defendant Fisher grabbed Plaintiff Cardenas by the arms, twisted him around, and slapped him in handcuffs.  When Defendant Fisher placed Plaintiff Cardenas in handcuffs, Cardenas immediately felt pain in his arm, shoulder, and back. Defendant Fisher handcuffed Plaintiff Cardenas "extremely, extremely tight" and was forceful in doing so.  Plaintiff Cardenas complained that the handcuffs were on too tightly.  Defendant Fisher did not loosen the cuffs.

Defendant Fisher maintains that he compared Plaintiff Cardenas with the person in the driver's license, and that he believed Plaintiff was the person in the driver's license.  Within less than a minute of entering the apartment, Defendant Fisher concedes he had Plaintiff Cardenas in handcuffs.  Defendant Fisher did not want Plaintiff Cardenas to run and did not know if Plaintiff Cardenas had any weapons on him.  He therefore detained him immediately upon entering the apartment.

Defendant Fisher repeatedly referred to Plaintiff Cardenas as "Isaac."  Plaintiffs Cardenas and Preito, and others present, repeatedly informed Defendant Fisher and the other officers that Plaintiff Cardenas was not the driver of the Honda.  Defendant Fisher told Plaintiff Preito twice to "shut up."

Defendant Fisher thereafter proceeded to search the interior of Plaintiff Preito's apartment without anyone's permission and without a warrant.  According to Plaintiff Cardenas, Defendant Fisher "started turning stuff upside down and moving things and looking through

-4-

drawers and looking under beds and just sort of tossing things around."  Plaintiff Preito testified

that "[Defendant Fisher] just threw everything, really."  Defendant Fisher concedes that he

searched the bedrooms and the hallway.  During Defendant Fisher's search, Fisher saw a leather

jacket and jeans with paint on them, like the driver of the Honda had been wearing.  Plaintiff

Preito maintains that her son had not worn the leather jacket that day and that the jacket had been

in her house prior to his arrival that day.  Defendant Fisher did not photograph or seize these

items.  Defendant Fisher testified that it was a mistake for him not to take the items into

evidence.

Plaintiff Cardenas informed the officers that he had identification proving he was Benjie

Cardenas in his apartment.  Plaintiff Cardenas took Defendant Fisher and the officers to his own

apartment, while he was still handcuffed, and produced proof of identity, including a birth

certificate, New Mexico driver's license, a rent receipt for Apartment C, and a utility bill.

Defendant Fisher entered Plaintiff Cardenas's apartment with Plaintiff Cardenas and

conducted a search of the apartment.  Defendant Fisher turned stuff upside down, looked through

drawers, moved things around, and "pretty much ransack[ed] the place."  No one gave

Defendant Fisher permission to search the apartment.

Plaintiff Cardenas's roommate, Jesus Garcia, and several other people present in

Apartment C, witnessed Defendant Fisher pulling the silver Honda Civic over.  These eye

witnesses attempted to convince Defendant Fisher and the other two officers that Plaintiff

Cardneas was not the individual who had run from Defendant Fisher at the traffic stop.  Mr.

Garcia pointed out the differences between the features in the two license photographs.  Mr.

Garcia also indicated that the driver of the Honda was drunk, that they saw him run from

Defendant Fisher, and that Plaintiff Cardenas was not that person.

Defendant Fisher refused to release Plaintiff Cardenas.  Although Defendant Fisher became convinced that Plaintiff Cardenas was not Isaac Romero, he nonetheless believed that Plaintiff Cardenas was the person in the Honda Civic at the traffic stop.  Defendant Fisher transported Plaintiff Cardenas to the police station, where Defendant Fisher charged him with concealing identity, eluding a police officer, improper use of a license plate, no insurance, and no registration.  Defendant Fisher did not charge Plaintiff with failing to stop at a stop sign or driving while intoxicated.

On the way to the police station, Defendant Fisher complained at length about having a migraine headache.  Defendant Fisher asked another officer for Ibuprofen or Tylenol.  Plaintiff Cardenas told Defendant Fisher, "I'm not trying to be an 'A-hole' or anything, but if you're dying from a migraine headache, how can you say I was this other guy?  And basically, [Defendant Fisher] told me – his exact words were '[w]ell, if I was being an A-hole, I would just tell you to shut the F up.'"

At the jail, another officer released the handcuffs, admitting, according to Plaintiff Cardenas, that "[t]hose cuffs are on way too tight."  The officer changed the cuffs out and placed Plaintiff Cardenas in a "zip tie."  Plaintiff Cardenas was in physical discomfort on his whole left side, from his shoulder to his lower back, while in the squad car and at the jail.

Plaintiff Cardenas sustained injuries as a result of the handcuffing, including bruises and abrasions around his wrists.  Plaintiff Cardenas had a "total deep mark in both of [his] wrists. They were just like real red, like red and just like circle indentations in [his] wrist."  Plaintiff Cardenas sought medical attention for his injuries a week or two after the incident and maintains that he was unable to work for approximately two months.

Defendant Fisher did not investigate who claimed the Honda Civic, which had been

towed from the scene.  There is no evidence that Defendant Fisher attempted to locate Isaac Romero at the address listed on the driver's license in Fisher's possession.

Defendant Fisher persisted in prosecuting the criminal charges against Plaintiff Cardenas. Plaintiff Cardenas posted bond to get out of jail and retained criminal counsel to defend him against the charges.  Plaintiff Cardenas was acquitted on all counts on June 19, 2006.

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"  *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim.  *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment

but rather must produce some specific factual support of its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense in a suit under 42 U.S.C. Section 1983. Qualified immunity bars Section 1983 suits against defendants in their individual--but not official--capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted). The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989)).

Once a moving party raises the defense of qualified immunity, the nonmoving party must

(1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). When a constitutional claim of excessive force is brought against a law enforcement officer, the first part of this inquiry requires a court to determine whether the parties' submissions, viewed in the light most favorable to the plaintiff, could show the officer's conduct violated a constitutional right. *Cf. id.* at 201. The second part of the inquiry requires a court to "assess[] the objective legal reasonableness of the action at the time of the alleged violation and ask[] whether 'the right was sufficiently clear that a reasonable officer would understand that what he [or she was] doing violates that right.'" *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quotation omitted); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted).

If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity. *See Medina*, 252 F.2d at 1128. If the nonmoving party, however, successfully demonstrates the violation of a clearly established right, the moving party assumes the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

## DISCUSSION

Defendant Fisher maintains that he is entitled to summary judgment in his favor on the grounds of qualified immunity. Specifically, Defendant Fisher contends (1) that qualified immunity protects him from prosecution for unlawful arrest and detention in violation of the

Fourth Amendment, and (2) that qualified immunity protects him from prosecution for the use of excessive force in violation of the Fourth Amendment.  Defendant Fisher further maintains that immunity has not been waived under the New Mexico Tort Claims Act (NMTCA) for Plaintiff Cardenas's state law malicious abuse of process claim against Defendant Fisher because Plaintiff cannot satisfy all of the elements of his claim.  The Court will consider each of these arguments in turn.[2]

I.    <u>Unlawful Arrest</u>.

Plaintiff Cardenas alleges that Defendant Fisher detained him unlawfully in violation of the Fourth Amendment, and that he therefore is entitled to relief under 42 U.S.C. Section 1983.  Section 1983 provides civil redress for deprivation of constitutional rights by persons acting under color of state law.  *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995).  Section 1983 provides in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[2] Plaintiff argues that the Court should decline to analyze this motion as a motion for summary judgment on the grounds of qualified immunity simply because Defendant Fisher has failed to demonstrate that Plaintiff's case rests on a new interpretation, nuance, or understanding of the law.  However, even if the Court were to assume that Plaintiff prevails on the "clearly established" prong of the qualified immunity test, Plaintiff's burden in refuting a claim of qualified immunity is two-fold:  Plaintiff must also establish that he has alleged facts that state a constitutional violation.  It is on this ground that Defendant Fisher challenges Plaintiff's ability to defeat qualified immunity, and it therefore is on this ground that the Court evaluates Defendant Fisher's motion.  The Court further notes that to the extent Plaintiff asks the Court to reject the qualified immunity standard articulated by the U.S. Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), and applied by Circuit Courts of Appeal across the nation, simply because Plaintiff contends that the policy of discouraging qualified immunity motions in police misconduct cases would be served, the Court declines to accept this invitation.

injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. §

1983.  Section 1983 was enacted "to provide protection to those persons wronged by the misuse

of power."  *Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (citations omitted).

Because Defendant Fisher has raised a qualified immunity defense to Plaintiff Cardenas's

unlawful arrest claim, the Court must evaluate the merits of the defense under the modified

summary judgment standard that applies to public officials who assert qualified immunity.  *See,*

*e.g.*, *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996).  To determine whether Plaintiff

Cardenas has satisfied the first part of his burden under this standard by establishing a

constitutional violation on the facts alleged, the Court must look to the substantive law in effect

at the time the conduct in question occurred.  *See Saucier v. Katz*, 533 U.S. 194, 199 (2001).

Because Defendant Fisher argues only that Plaintiff Cardenas cannot state a constitutional

violation, the Court considers only this prong of the qualified immunity analysis.

"Section 1983 creates no substantive civil rights, but rather only a procedural mechanism

for enforcing them"; the Court's analysis therefore must focus on the alleged violation of the

Fourth Amendment.  *See Wilson*, 52 F.3d at 1552 (citation omitted); *Graham v. Connor*, 490

U.S. 386, 393-94 (1989).  The Fourth Amendment provides that the "right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const.

Amend. IV.  The seizure of a person occurs "when [an] officer by means of physical force or

show of authority has in some way restrained the liberty of a citizen."  *Terry v. Ohio*, 392 U.S. 1,

19 n.16 (1968).  In other words, a seizure has occurred when an official show of authority leads a

reasonable person to believe that he or she is not free to leave or go about his or her business,

ignoring the officer's presence.  *See Florida v. Royer*, 460 U.S. 491, 501-02 (1983).

Under the Fourth Amendment, arrests or *de facto* arrests must be supported by probable cause.[3]  *See United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993).  The probable cause standard allows a police officer to arrest a person without a warrant if the officer has probable cause to believe that the person committed a crime.  *Tennessee v. Garner*, 471 US. 1 (1985).  "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)) (additional citations omitted); *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir. 1991) (citation omitted).  "When a warrantless arrest is the subject of a 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero*, 45 F.3d at 1476 (quoting *Hunter v. Bryant*, 502 U.S. 224 (1991)).  "When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Glass v. Pfeffer*, 657 F.2d 252, 256 (10th Cir. 1981) (quoting *Hill v. California*, 401 U.S. 797, 801 (1971)).  The probable cause standard is evaluated from the information within the arresting officer's knowledge and not from the knowledge of the arrestee or other third parties.  *Romero*, 45 F.3d at 1478.

Defendant Fisher maintains that a reasonable officer in his position could have believed that Plaintiff Cardenas had committed a crime.  Defendant Fisher observed that an individual

---

[3] Defendant Fisher does not argue that he had reasonable suspicion to justify an investigative detention of Plaintiff Cardenas.  Accordingly, the Court confines its analysis to the question whether Defendant Fisher had probable cause to arrest Plaintiff Cardenas.

matching Plaintiff Cardenas's description was the driver of the vehicle he stopped for traffic violations.  Plaintiff Cardenas and the driver of the vehicle both had facial hair and a similar hair style and color.  Plaintiff Cardenas looked similar to the person depicted in the photograph on the driver's license bearing the name Isaac Romero.  Although the driver produced a license indicating that he lived at a location other than John Street, the driver indicated that he lived in the immediate vicinity of the traffic stop and he ran in the general direction of Plaintiff Cardenas's apartment.  Plaintiff Cardenas lived on John Street.  Defendant Fisher further argues, and the Court agrees, that protestations of innocence do not necessarily negate the existence of probable cause.

On a motion for summary judgment on the grounds of qualified immunity, however, the Court is required to consider the facts as alleged by Plaintiff Cardenas.  Plaintiff Cardenas has alleged and presented evidence indicating that Defendant Fisher was aware that the driver of the vehicle was slurring his words and was not talking clearly while he was speaking to Defendant Fisher, and that he was acting as though he were under the influence of an intoxicating substance.  He kept saying to Defendant Fisher, "Excuse me, Your Honor, can I call my lawyer?"  Defendant Fisher responded, "Are you serious?" and started laughing.  Defendant Fisher does not dispute that Plaintiff Cardenas, in contrast, was not slurring his words, speaking unclearly, or calling Defendant Fisher "Your Honor."  Even if Defendant Fisher did not believe that the driver was intoxicated or under the influence of a substance, the facts and circumstances within Defendant Fisher's knowledge indicated that the demeanor or the two individuals was drastically different.

Although Defendant Fisher argues in his reply brief that "there is no credible evidence in the record that the driver was intoxicated," the Court may not make credibility determinations at

this stage.  Rather, on a qualified immunity analysis, the Court must accept as true the facts as alleged by Plaintiff, and Plaintiff has alleged and set forth evidence indicating that the driver of the Honda Civic was slurring his words, speaking unclearly, and calling Defendant Fisher "Your Honor."

Although Defendant Fisher also argues that there is no evidence he was told or had reason to believe that the driver was intoxicated, the evidence presented by Plaintiff Cardenas, which the Court must accept as true at this stage in the litigation, indicates that Defendant Fisher had sufficient facts within his personal knowledge to indicate that the driver of the Honda was speaking in an manner and exhibiting behavior far different from that of Plaintiff Cardenas. Specifically, the facts as alleged by Plaintiff Cardenas establish that Defendant Fisher interacted and spoke with the driver while the driver was slurring his words and not speaking clearly, and while the driver appeared visibly intoxicated or under the influence of a substance.  The evidence further indicates that Defendant Fisher heard the driver refer to him as "Your Honor," and that Defendant Fisher laughed at the driver's statement.  This evidence, if believed, indicates that Defendant Fisher was aware that the driver was exhibiting behavior and speaking patterns consistent with those of an intoxicated person.

Although it is a close call, the Court concludes that on the facts as alleged by Plaintiff Cardenas, a reasonable officer in Defendant Fisher's position, having himself observed, interacted with, and spoken to the driver of the Honda Civic, would not have believed he had probable cause to suspect that it was Plaintiff Cardenas he had stopped for the traffic violations. In addition, the Court cannot at this stage of the litigation conclude that Defendant Fisher reasonably mistook Plaintiff Cardenas for the person who fled the traffic stop.  Accordingly, the Court concludes that Plaintiff Cardenas has alleged facts that, if believed, state a violation of his

constitutional right to be free from unlawful arrest.  Defendant Fisher's motion for summary judgment on Plaintiff Cardenas's unlawful arrest claim on the ground of qualified immunity is therefore denied.

II.     Excessive Force.

Plaintiff Cardenas argues that Defendant Fisher used unlawful excessive force against him in violation of the Fourth Amendment, and that Plaintiff therefore is entitled to relief under 42 U.S.C. Section 1983.  Defendant Fisher, in response, maintains that he is entitled to qualified immunity on Plaintiff Cardenas's excessive force claim because Plaintiff Cardenas's injury was *de minimis* such that he cannot state a cognizable constitutional claim.   Once again, Defendant Fisher bases his motion only on the first prong of the qualified immunity analysis.  The Court therefore considers only whether Plaintiff Cardenas has stated a constitutional violation of his right to be free from excessive force.

The Supreme Court has explained that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The degree of physical coercion that law enforcement officers may use is not unlimited, however, and "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Id.* 395.  In defining the parameters of this reasonableness standard, the Graham Court stated:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . .  Because the

> test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (internal citations and quotations omitted); *see also Garner*, 471 U.S. at 8-9 ("[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.").

The *Graham* Court continued:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (internal citations and quotations omitted).  Furthermore, the Tenth Circuit has held that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests--a person's sense of security and individual dignity."  *Holland ex rel. Overdorff v. Harrington*, 268

F.3d 1179, 1196 (10th Cir. 2001) (internal quotation omitted).

Here, taking Plaintiff Cardenas's allegations as true and viewing the evidence in the light most favorable to him, *see Kirkland v. St. Vrain Valley Sch. Dist.*, 464 F.3d 1182, 1188 (10th Cir. 2006), it appears that when Plaintiff Cardenas answered the door, Defendant Fisher immediately pushed into the home, tackled Plaintiff Cardenas, grabbed him by the arms, twisted him around, and slapped him in handcuffs that were "extremely, extremely tight." Plaintiff Cardenas further produced evidence that at the time Defendant Fisher handcuffed him, he complained that the handcuffs were on too tightly, and that Defendant Fisher nonetheless did not loosen the cuffs. Plaintiff Cardenas also set forth evidence that at the jail, another officer released the handcuffs, admitting that "[t]hose cuffs are on way too tight." Plaintiff Cardenas further presented evidence demonstrating that from the moment he was handcuffed, he continuously felt pain in his arm, shoulder, back, and entire left side. Plaintiff Cardenas testified that he had bruises and abrasions around his wrists from the handcuffs, that he sought medical attention for his injuries, and that he was unable to work for approximately two months as a result of his injuries.

The Court must evaluate these facts in the context of *Graham*. The first *Graham* factor, the severity of the crimes at issue, weighs in favor of Plaintiff Cardenas. The crimes of eluding a police officer, improper use of a license plate, no insurance, and no registration are not, relatively speaking, severe crimes.

The second *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers or others (which must be the primary focus of the Court's reasonableness inquiry, *see Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)), likewise weighs in Plaintiff Cardenas's favor. There is no indication in the record that Plaintiff Cardenas posed an

immediate threat to the safety of Defendant Fisher or others.  Plaintiff Cardenas was not acting in an aggressive manner or taking an otherwise hostile stance.  Plaintiff Cardenas was not shouting aggressive or hostile words or exhibiting other combative behavior.  Moreover, nothing in the record suggests that Plaintiff Cardenas was armed.  Rather, Plaintiff Cardenas came voluntarily to his front door wearing only shorts and a tank top.  *Cf. Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007) (en banc).  Although Plaintiff Cardenas was not alone in the house, this fact by itself is not sufficient to tip the analysis in Defendant Fisher's favor.

The third *Graham* factor, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, weighs marginally in Plaintiff Cardenas's favor.  Although the suspect Defendant Fisher believed Plaintiff to be had evaded detention by flight, this fact is mitigated by the fact that Plaintiff Cardenas opened the door of the apartment voluntarily and that, upon opening the door, he did not attempt to flee or otherwise move away from the officers.  *Cf. id.*

Although these factors weigh in Plaintiff Cardenas's favor, the excessive force inquiry does not end here.  In *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (en banc), the Tenth Circuit found that even though two of the three *Graham* factors weighed in the plaintiff's favor, the alleged excessive force violation was nonetheless *de minimis* and therefore insufficient to state an excessive force claim as a matter of law.  Although the Tenth Circuit acknowledged that "unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints," the court nonetheless concluded that the handcuffing at issue did not violate the Fourth Amendment.  *Id.* at 1129.

In *Cortez*, the plaintiff, who had been accused of committing a violent felony but was not resisting arrest at the time, was grabbed and pulled out of the house by one of the officers; after

being handcuffed and put into the back seat of a patrol car, the plaintiff complained that the

handcuffs were too tight.  *Id.* at 1128.  The plaintiff's affidavit indicated that he told the officer

in the car with him that the handcuffs were too tight and hurting him, that the officer failed to

take any action to loosen the handcuffs, that the handcuffs left red marks on both of his wrists for

several days, and that his wrists were so marked that they were visible to casual observers.  *Id.*

In finding no constitutional violation, the Tenth Circuit explained,

> Although [the plaintiff] complained to the officer that the
> handcuffs were too tight, the summary judgment record presents
> too little evidence of any actual injury.  We believe that a claim of
> excessive force requires some actual injury that is not *de minimis*,
> be it physical or emotional.  The only evidence in the record is his
> affidavit that the handcuffs left red marks that were visible for
> days afterward. . . .  This is insufficient, as a matter of law, to
> support an excessive force claim if the use of handcuffs is
> otherwise justified.

*Id.* at 1129.

Here, likewise, Plaintiff Cardenas has presented no evidence regarding his alleged injury

other than his own deposition testimony regarding the bruises and marks on his wrists.[4]

Likewise, as in *Cortez*, Plaintiff Cardenas failed to present any proof of injury from health care

providers or photographs.  In contrast, however, Plaintiff Cardenas testified that he sought

medical attention for his injuries and that he was unable to work for approximately two months

as a result of his injuries.  Plaintiff Cardenas also testified that at the jail another officer released

his handcuffs and admitted that the handcuffs were on "way too tight."  Plaintiff Cardenas

further testified that from the moment he was handcuffed, he continuously felt pain in his arm,

shoulder, back, and entire left side.  In addition, Plaintiff Cardenas presented evidence indicating

---

[4] Of course, deposition testimony, unlike the affidavit at issue in *Cortez*, is subject to cross-examination and is thus more reliable than an affidavit.

-19-

that upon answering the door, Defendant Fisher immediately pushed into the apartment and tackled Plaintiff Cardenas.  These facts are sufficient to distinguish this case from *Cortez*.

Admittedly, Plaintiff Cardenas has presented no independent evidence in support of his claim that he could not work for two months, that he sought medical attention for his injuries, or that the officer at the jail admitted the handcuffs were too tight.  The Court has no doubt that at trial Plaintiff Cardenas will be required to come forward with evidence sufficient to prove actual injury that is not *de minimis*.  For purposes of a qualified immunity summary judgment analysis, however, the Court must accept Plaintiff Cardenas's allegations as true.  Although once again a close call, the Court concludes that, on the facts alleged by Plaintiff Cardenas, Plaintiff has stated a constitutional excessive force violation.  Defendant Fisher's motion for summary judgment on the ground of qualified immunity is therefore denied.

III.   Malicious Prosecution.

Defendant Fisher moves for summary judgment on Plaintiff Cardenas's state law malicious abuse of process claim.  Potential state law tort liability of a governmental entity and its employees is limited by the specific provisions set forth in the New Mexico Tort Claims Act (NMTCA).  The NMTCA provides governmental entities and public employees with immunity from tort suits unless there is a specific waiver of that immunity set forth under the Act. *Weinstein v. City of Santa Fe*, 121 N.M. 646, 649, 916 P.2d 1313, 1315 (N.M. 1996).  Section 41-4-12 of the NMTCA sets forth the specific torts for which the State of New Mexico has waived immunity for law enforcement officers.

Defendant Fisher argues that in this case the State has not waived immunity because Plaintiff Cardenas cannot state a valid state law tort claim for malicious abuse of process. Malicious abuse of process is a merged tort comprised of the former separate torts of malicious

prosecution and abuse of process.  *See Devaney v. Thriftway Marketing Corp.*, 124 N.M. 512,

517, 953 P.2d 277, 282 (N.M. 1997).  The elements for a malicious abuse of process claim are

(1) initiation of judicial proceedings against a plaintiff by a defendant, (2) an act by the

defendant in the use of process other than such as would be proper in the regular prosecution of

the claim, (3) a primary motive by the defendant in misusing the process to accomplish an

illegitimate end, and (4) damages.  *Id.* at 518, 953 P.2d at 283.

      Defendant Fisher challenges only Plaintiff Cardenas's ability to establish the second

element of his malicious abuse of process claim.  A plaintiff may satisfy the second element by

showing either a lack of probable cause or a procedural impropriety.  *Westar Mortgage Corp. v.

Jackson*, 133 N.M. 114, 122, 61 P.3d 823, 831 (N.M. 2002).  In this regard, probable cause

means a reasonable belief, founded on known facts established after a reasonable pre-filing

investigation, that a claim can be established to the satisfaction of a court or jury.  *Id.*  Whereas a

procedural impropriety arises if there was an improper use of criminal or civil process in a

manner not contemplated by law.  *Id.* at 124, 61 P.3d at 833.  There is no liability when the

defendant in an abuse of process claim has done nothing more than carry out the process to its

authorized conclusion, even if done with bad intentions.  *Id.*

      Defendant Fisher argues that Plaintiff Cardenas's malicious abuse of process claim must

fail as a matter of law because when Plaintiff was bound over for trial a tribunal found that

probable cause was present.  In New Mexico, "The fact that a plaintiff has been bound over for

trial on the criminal matter constitutes prima facie evidence of the existence of probable cause

for the detention."  *Id.* at 123, 61 P.3d at 832 (citations omitted); *see also, e.g.*, *Christopher v.

Circle K Convenience Stores, Inc.*, 937 P.2d 77, 79 (Okla. 1997) (stating that a finding of

probable cause at a preliminary hearing binding over a defendant for criminal trial precluded a

plaintiff in a subsequent civil suit for false arrest from relitigating the issue of probable cause); *Price v. Cochran*, 205 F. Supp. 2d 1241 (D. Kan. 2002) (finding of probable cause by a magistrate judge is prima facie evidence of probable cause in a false arrest case). The prima facie case may be rebutted or overcome by a preponderance of the evidence. *Id.* at 1248. Rebuttal evidence could include evidence that the action of the magistrate was obtained by fraud, false testimony, or other improper means or that defendant withheld material facts at the hearing. *Cf. Davis v. Quille*, 237 A.2d 745 (Md. 1968) (quoting 54 C.J.S. § 34(b) and citing 34 Am. Jur. § 64; Restatement (Torts) § 663(2)); *compare Mendoza v. K-Mart, Inc*., 587 F.2d 1052, 1060 (10th Cir. 1978) (prima facie evidence of probable cause by a conviction may be overcome by showing that the conviction was obtained through corruption, perjury, or other unfair means).

Plaintiff Cardenas has not set forth any evidence that the action of the magistrate was obtained by fraud, false testimony, or other improper means, or that Defendant Fisher withheld material facts at the hearing. Rather, the evidence set forth by Plaintiff Cardenas primarily relates to the events on the night of December 3, 2005. Plaintiff Cardenas presented evidence that the driver of the Honda Civic was slurring his words, speaking unclearly, and calling Defendant Fisher "Your Honor" at the time of the detention, and that Plaintiff Cardenas was not exhibiting such behavior or speech patterns. Although disputed by Defendant Fisher, the Court must, for purposes of summary judgment, view the evidence in the light most favorable to Plaintiff Cardenas. The Court already has determined that upon the facts alleged by Plaintiff Cardenas, a reasonable officer in Defendant Fisher's position would not have believed he had probable cause to arrest Plaintiff Cardenas. *Compare Thompson v. City of Lawrence*, 58 F.3d 1511 (10th Cir. 1995) (undertaking a substantive review of the evidence to determine whether the plaintiff overcame the prima facie presumption of probable cause that arose from a finding of

probable cause at a preliminary hearing).  The Court further notes, "'Where the evidence is

conflicting on the question of the existence of probable cause, the court should submit the issue

to the jury' even though 'a judge found that probable cause existed to detain' the plaintiffs and

had bound them over for trial.  *Gouskos v. Griffith*, No. 03-5133, 2005 U.S. App. LEXIS 2783,

at *19 (10th Cir. Feb. 17, 2005) (applying Oklahoma law and citing *Powell v. LeForce*, 848 P.2d

17, 18-19 (Okla. 1992)).  Accordingly, the Court denies Defendant Fisher's motion for summary

judgment on Plaintiff Cardenas's state law malicious abuse of process claim.[5]

### CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant Matthew

Fisher's Motion for Partial Summary Judgment Requesting Dismissal of Counts II, III, IV, and

VI of Plaintiffs' Complaint, filed Motion for Summary Judgment, filed July 31, 2007 [Doc. No.

45], is hereby **DENIED**.

Dated this 3rd day of January 2008.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

---

[5] The Court does not decide at this time whether a reasonable pre-filing investigation would include a determination who picked up the Honda Civic from the towing company and who resided at the address on the driver's license allegedly belonging to Isaac Romero or whether it would include taking into evidence the jacket and pants Defendant Fisher allegedly observed in Plaintiff Preito's apartment.